## SAMUEL W. HOUGH *vs.* CITY FIRE INSURANCE COMPANY.

An applicant for insurance had described the property in a written application as " *his* house," and it was so described in the policy. The policy contained the following condition : " If the interest in the property to be insured is not *absolute*, it must be so represented to the company, and expressed in the policy in writing ; otherwise the insurance shall be void." The legal title to the property was in another party, with whom the insured had, at the time of the application, made a parol contract for its purchase, for a price agreed upon, which the insured had agreed absolutely to pay, and a part of which he had paid, and the insured had entered into possession as purchaser, and had made valuable improvements on the property. Upon the claim of the insurance company, in a suit on the policy, that the insurance was void by reason of the omission of the insured to state in his application the condition of the title, the court charged the jury that the plaintiff was to be regarded as the owner of the property, if he had the equitable title, and his interest was such that the loss would fall on him if the property was destroyed. Held, that the charge was correct.

That is to be regarded as an absolute interest, which is so completely vested in the party owning it that he can not be deprived of it without his consent.

In the above suit the plaintiff offered parol evidence to show that he stated to one *H*, an agent of the defendants, the exact facts as to the state of his title, and that *H* filled out the application in his own language. Held, 1. That the evidence was not inadmissible on the ground that the parol statement was merged in the written one, since, so far as the latter varied from the former it was the defendants' own mistake, of which they ought not to be allowed to take advantage, and which ought not to debar the plaintiff from showing that the statement which he actually made was in accordance with the truth. 2. That it was also admissible as showing that the parties, upon the statement of the facts, agreed to consider and describe the property as the property of the plaintiff. 3. And further, that, as the interest of the plaintiff was in fact absolute, the condition of the policy, which required a statement of it in writing only where not absolute, did not apply.

The defendants claimed that *H* was their agent only for certain definite purposes, and that he had no authority as such to fill out applications for parties applying

Hough *v.* City Fire Insurance Company.

for insurance. The defendants had recognized him in their policies as their agent, but there was no written evidence of the extent of his authority. Upon all the evidence, the court submitted the question as to the extent of his authority, wholly as one of fact, to the jury. Held, that this course was correct. A " survey " embraced in the application, contained the following interrogatory : " How are the several stories occupied ? " which the applicant had answered as follows : " Unoccupied, but to be occupied by a tenant." The policy contained the following condition : " When a policy is issued upon a survey and description of the property, such survey and description shall be deemed to be a part of the policy, and a warranty on the part of the assured." Held, that the answer was not to be considered as a stipulation that the house should be occupied by a tenant, but as a reservation on the part of the applicant of the right to have it so occupied, and to avoid the inference that it was to remain unoccupied.

The plaintiff however offered evidence to prove that he had made all reasonable effort to let the premises, from the time of the insurance in January, down to the time of the fire, in September following, but without success ; and the court instructed the jury that, even if the answer was a stipulation that the house should be occupied by a tenant, yet, as no time was specified when such occupancy was to commence, the warranty would not be broken if such occupancy was procured within a reasonable time, and left it to them as a question of fact upon the evidence whether the stipulation was broken by a non-occupation beyond a reasonable time. Held, that this instruction was correct.

ASSUMPSIT, on a policy of insurance.

The plaintiff, on the 18th of January, 1856, made a written application to the defendants for insurance, the material parts of which are as follows :—" Application of Samuel W. Hough, of Fairfield, Connecticut, for insurance against loss or damage by fire, by the City Fire Insurance Company, of Hartford, Conn., in the sum of $1,400, for the term of three years, commencing the 18th day of January, 1856, at noon, on the property specified, to wit :

|  | Sum to be insured. | Valuation. |
|---|---|---|
| " On his frame dwelling house, . . . | $1,200 | $1,800 |
| "    "    barn, about 100 ft. east of house, | 100 | 200 |
| "   hay and grain therein, . . . . . . | 100 | 150 |

" The said applicant makes the following statements, and gives the following answers to the interrogatories here put relating to the risk.

SURVEY OF PREMISES.

\*       \*       \*       \*       \*       \*       \*

" 4. How are the several stories occupied ? *Ans.* Unoccupied, but to be occupied by tenant.

\*       \*       \*       \*       \*       \*       \*

" And the said applicant hereby covenants and agrees with the said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk.   Dated January 18th, 1856.

S. W. HOUGH, Applicant."

The defendants on the 21st day of January issued the policy in question upon this application, making it, however, for the term of one year only.   The property insured was described in the policy as the property of the plaintiff, in the same manner as in the application.   The property insured was destroyed by fire on the 24th of September, 1856.

The defendants claimed in defense that the property insured was not owned by the plaintiff at the time of the insurance, as he had represented in his application, and that the dwelling-house insured was not occupied by a tenant at the time of the fire, as was stipulated in the application, and that by reason of these facts the insurance was void.

The policy contained the following conditions, among others:

" 3.   Property held in trust, or on commission, must be insured as such; otherwise the policy will not cover such property.   If the interest in property to be insured be a leasehold interest, or other interest not absolute, it must be so represented to the company, and expressed in the policy in writing, otherwise the insurance shall be void.

" 12.   When a policy is made and issued upon a survey and description of certain property, such survey and description shall be taken and deemed to be a part and portion of such policy, and a warranty on the part of the assured."

The plaintiff, to prove that he was the owner of the property at the time of the insurance and the loss, offered in evidence a quitclaim deed of certain real estate, embracing the buildings in question, from Alva Hough, his father, who had previously owned and occupied the premises, to one Eliakim Hough, brother of the said Alva, dated April 16, 1855, and

executed a short time before the death of the said Alva; with an instrument of the same date, executed by the said Eliakim and delivered to the said Alva, by which the former acknowledged the conveyance of the property to him, and agreed to hold it, with certain personal property also assigned to him, in trust, first, for the payment of the debts of the said Alva, after his decease, and, secondly, for the benefit of his heirs; the same to be divided among them as follows:—to Samuel W. Hough (the plaintiff) one share, to Henry E. Hough one share, and to the children of Marietta E. Wells one share. The plaintiff also offered evidence to prove that, soon after the death of the said Alva, it was agreed between the said Eliakim and himself, by parol, that the plaintiff should take the property conveyed to the said Eliakim, and perform the stipulations of the certificate of trust; and it was agreed that he should pay $1,000 to Henry E. Hough in full of his share, and the same sum to the children of Marietta E. Wells, in full of their share; that he should also pay to the said Eliakim $2,600.00,—$1,600 of which had been previously secured by a mortgage from said Alva to him, on a portion of the real estate, and $1,000 of which was lent by him to the plaintiff after said Alva's death; and that the plaintiff should immediately enter upon the possession of the premises; and that said Eliakim should give him a quit claim deed of the same, whenever he should pay him said sum of $2,600. And the plaintiff further offered evidence to prove, that in pursuance of the agreement he took possession of the premises, and shortly after erected a dwelling house on the land at an expense of $2,700, and that he was in possession at the time of the application for insurance, and of the issuing of the policy, and that he paid all the claims which came to his knowledge against the estate of the said Alva. It was, however, admitted that the $2,600 had not been paid, and that the legal title still remained in said Eliakim. The plaintiff further offered evidence to prove that, in pursuance of the agreement, he had, in the fall of 1855, paid to his brother Henry $50, and had invested the sum of $700 for the benefit of the children of the said Marietta. To all this evidence the def

ants objected, claiming that it did not show, nor tend to show, that the plaintiff was the owner of the house in question, within the fair import of the writings between the parties; but the court received it.

The plaintiff further offered evidence, that he procured the policy of insurance from one Houghton, who acted in the transaction in behalf of the defendants, as their local agent in Bridgeport and its vicinity, but no evidence was offered as to the extent of his authority except what appeared on the policy, (the policy being countersigned by him as agent of the company, and containing a provision that it should not be valid until countersigned by him as such agent;) and the plaintiff offered to prove, that during the negotiation for the insurance he fully stated to Houghton the facts relating to his title to the property insured, and that his application for insurance was filled out by Houghton, the plaintiff doing none of the writing except to sign his name thereto. To this evidence the defendants objected, on the ground that all such parol statements were merged in the written contract, as contained in the survey, application and policy, and on the ground that the representations made by the plaintiff of his interest in the property insured should have been made to the company itself or to its officers in writing. And they claimed that Houghton was not agent for the company for the purpose of receiving such representations, and had no authority except to receive and transmit applications and surveys in writing to the officers of the company for their action upon the papers thus transmitted, and to countersign and deliver policies when sent to him for such purpose by the company, and that by the terms of the policy such representations, in order to be binding on them, should have been expressed in the policy. The court overruled the objection and received the evidence.

The defendants claimed, and the plaintiff admitted, that the buildings insured remained unoccupied from the time of the insurance down to the time of their destruction by fire, and the defendants thereupon claimed that the clause in the application, " to be occupied by a tenant," was a stipulation and warranty, and that the plaintiff could not recover by

reason of his failure to perform the stipulation. The plaintiff denied that it was to be regarded as a stipulation or warranty, but claimed that, if it was to be so regarded, he was entitled to a reasonable time to procure a tenant; and offered evidence to show that the premises were vacated some three months before the date of the policy, and that, before the policy was issued, he posted notices in writing, that the premises were to be let, on trees in front of the house, and a like notice at the intersection of the road on which the house fronted with the Connecticut Turnpike, and that the notices were continued down to the time of the fire, and that no applications were made for the premises. The defendants objected to this evidence, claiming that it was inadmissible in itself, as contradicting the contract, and that it did not prove or tend to prove a compliance with the stipulation, or furnish any excuse for non-compliance. The court admitted the evidence.

The defendants requested the court to charge the jury that the plaintiff, on his own evidence, was not entitled to recover, on the grounds stated by the defendants in their objection to the testimony. The court instructed the jury that a perfect legal title was not essential to the plaintiff's right of recovery; that he might be regarded as the real owner if he had the equitable title, and if his interest was such that the loss by fire would fall on him and be his loss; that in such case the property was *his* within the fair import of the application in which it was described as his; but that he could not recover if, in the opinion of the jury, he had been guilty of any fraud, misrepresentation or concealment in regard to the state of his title; that the evidence of the plaintiff's statements regarding his title made to Houghton were admissible; that the question whether Houghton was the proper agent of the company to receive the statements, and whether he was authorized in fact to receive them, and whether the statements made to him were to be regarded as made to the company, were questions of fact to be decided by the jury; that the court, in admitting the testimony, did not undertake to decide the extent of the agent's authority, but merely that there was such evidence

of authority as rendered it proper that the evidence should go to the jury.

The court further instructed the jury, that if they found that the plaintiff had, by his statement to Houghton, truly and fairly represented to the company the nature of his interest and title to the property insured, he was not precluded from a recovery by reason of the failure to specify particularly in the policy the nature of that title, nor by reason of the failure to make such representation in writing.

The court further said to the jury, that the clause in the plaintiff's application, " to be occupied by a tenant," was not, in the opinion of the court, a warranty or stipulation, but *pro forma* instructed them to regard it as such, and that, taking it to be a stipulation and warranty, no time being specified when such occupation was to commence, the stipulation would not be broken if the occupation by a tenant should be procured within a reasonable time after the date of the policy ; and left it with the jury to say, upon the evidence, whether the stipulation had been broken by the non-occupation by a tenant within a reasonable time.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial.

*E. A. Bulkeley* and *Carter*, in support of the motion.

1. The plaintiff's interest in the premises was not the interest represented and insured by the policy. *Columbian Ins. Co.* v. *Lawrence*, 2 Pet., 25, 47. The third article of the conditions of the policy requires that the interest of an applicant for insurance in the property to be insured, if " not absolute," should be distinctly stated and expressed in the policy in writing. The term " absolute " intends such an interest as is evidenced by a complete title, both at law and in equity. It was understood in this sense in the case of *Warner* v. *Middlesex Mut. Assu. Co.*, 21 Conn., 444. 2 Bla. Com., 106.

2. The statement of the plaintiff to Houghton, with regard to the character of his interest, was not admissible. *Sheldon* v. *Hartford Fire Ins. Co.*, 22 Conn., 240. Houghton was not an agent for the purpose of receiving such statements for

the company. *Bouton* v. *American Mut. Life Ins. Co.*, 25 Conn., 542. And the whole evidence in regard to his agency being in writing, the court should have decided as matter of law the extent of his agency. The plaintiff applied for a policy for three years. He knew that Houghton had no power to issue a policy, and that his application was to be sent to the company at Hartford, who were to issue a policy or not, upon his written application. The company did not agree to issue a policy for the term proposed by the plaintiff, but only for one year, and with the requirement, in the 3d article of the conditions, as to the statement of the plaintiff's interest. He was then fully aware of the conditions on which the policy issued, and if his interest in the premises was not truly expressed in the policy, he should have sent it back or declined to receive it. The fault is that of the plaintiff, and not that of the company.

3. There was a warranty that the building should be occupied at once. This matter in the application related to the risk. *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn., 533. It is expressly made a warranty by the 12th article of the conditions. If it was not expressly made a warranty, the Court would hold it to be so. *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 Conn., 19; *Sheldon* v. *Hartford Fire Ins. Co.*, 22 Conn., 235. Being a warranty it must have been strictly complied with, and the evidence to show reasons for a noncompliance was not admissible. If, however, the fair meaning of the stipulation was, as held by the Court, that the building should be occupied in a reasonable time, then, as it remained unoccupied for almost two-thirds of the whole term of the insurance, the Court should have decided, upon the admitted facts, whether it was occupied in a reasonable time, as matter of law. *Columbian Ins. Co.* v. *Lawrence*, 10 Pet., 507. *Benham* v. *Bishop*, 9 Conn., 330. *Averill* v. *Hedge*, 12 id., 424. *Wilcox* v. *Roath*, id., 550. *Crafts* v. *Isham*, 13 id., 28.

*Dutton* and *Sturges*, contra.

1. The evidence offered by the plaintiff, that, at the time of the insurance, he was in the possession of the buildings

insured as owner, under a valid contract of purchase, in part performed, was admissible.   The title acquired by such contract and possession was an insurable interest.   *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend., 385.   Angell on Ins., §§ 66, 67, 69.   *Marks* v. *Hamilton*, 9 Eng. L. & Eq., 503.

2. The representation of the plaintiff in his application for insurance, that the buildings were his, was substantially true, and there is nothing in the condition of the policy, or in the terms of the application itself, requiring a more particular statement of his title.   *Strong* v. *Manufacturers' Ins. Co.*, 10 Pick., 40.   *Chase* v. *Hamilton Mut. Ins. Co.*, 22 Barb., 527. *Allen* v. *Charlestown Mut. Ins. Co.*, 5 Gray, 384.   The agreement of Eliakim Hough to convey to the plaintiff was absolute, and the agreement on the part of the plaintiff to pay was also absolute.   No power of sale is reserved in the original agreement of Eliakim Hough with Alva Hough, and . yet the debts are to be paid out of the property, which shows that the original parties to the conveyance regarded the title as absolute in Eliakim Hough.   The interest of the plaintiff was absolute, within the meaning of the policy, as contradistinguished from conditional or limited.   But, if otherwise, the plaintiff disclosed to Houghton, the agent of the defendants, the true nature of his title, which was a compliance with the conditions of the policy.   *McEwen* v. *Montgomery County Ins. Co.*, 5 Hill, 101.   Story on Agency, § 140.   *Wing* v. *Harvey*, 27 Eng. L. & Eq., 140.   *Peck* v. *New London County Ins. Co.*, 22 Conn., 575.   Parsons' Merc. Law, 136.   *Methuen Co.* v. *Hayes*, 33 Maine, 169.   *Beebe* v. *Hartford County Mut. Ins. Co.*, 25 Conn., 51.   *Malleable Iron Works* v. *Phoenix Ins. Co.*, id., 465.   The policy was prepared by the defendants, and if they have not accurately set out the true title when apprised of it, it is their mistake or omission, of which they can not take advantage.   *Ætna Ins. Co.* v. *Jackson*, 16 B. Monr., 242.

3. The statement that the house was to be occupied by a tenant was not a warranty, but the reservation of a privilege by the plaintiff to occupy it in that manner if he should think proper.   Angell on Ins., § 169.   *O'Neil* v. *Buffalo Fire Ins. Co.*, 3 Comst., 122.   *Catlin* v. *Springfield Ins. Co.*, 1 Sum-

ner, 435.   But if it was a warranty, the plaintiff had a reas-
onable time within which to procure a tenant, and the jury
have found that a reasonable time had not elapsed.   *Murdock*
v. *Chenango Co. Mut. Ins. Co.*, 2 Comst., 210.   *Gloucester
Manufacturing Co.* v. *Howard Fire Ins. Co.*, 5 Gray, 497.

SANFORD, J.   That the evidence introduced by the plaintiff
to prove his ownership of the property destroyed, conduced to
prove that he had an equitable title to, and consequently an
insurable interest in it, is undeniable.   It went to show that,
before the making of the application, he had contracted with
Eliakim Hough for the purchase of the property at a stipulated
price, had paid a considerable portion of the purchase money
in the way agreed upon, had taken possession as purchaser,
and held as owner of the property, and had expended a large
amount in making permanent and valuable improvements
thereon, and that, at the time of the contract, Eliakim Hough
was the undisputed owner of the property in fee simple, under
an absolute deed from Alvah Hough the former proprietor.
So that if the fact which that evidence conduced to prove was
true, the plaintiff had a vested interest in the property, which
a court of equity would undoubtedly have recognized and
protected.

But it is said that the question was not whether the plaintiff
had an insurable interest in the property, but whether he had
the interest described in his application.   The defendants
contend that by the terms " his frame dwelling house," &c.,
the plaintiff represented the property to be his absolute estate
in fee simple, while the evidence went to show that his estate
was less than a fee simple, and was not an absolute interest
within the meaning of the third article of the " conditions of
insurance " annexed to the policy.

We think the defendants are wrong.   An individual may
properly regard property as " his," and so denominate it,
when he has a right to it, and the power by law to enforce and
protect that right.   And no better criterion of rightful owner-
ship can be produced, than that given to the jury in the judge's
charge.   Indeed, both in common parlance and in legal accep-

tation, property is *his*, who, in case of its destruction, must sustain the loss of it. In the case at bar, the contract between the plaintiff and Eliakim Hough—the one to pay the stipulated price, the other upon such payment to convey the legal title—was, in regard to both of them, subject to no condition and liable to no contingency. Both parties regarded the property as the plaintiff's, and treated it accordingly, and we think it was no misdescription of the plaintiff's interest in it, or misrepresentation regarding it, to call it *his*.

We think too, that the evidence conduced to prove that the plaintiff's interest in that property was an absolute interest. That is an absolute interest in property, which is so completely vested in the individual that he can by no contingency be deprived of it without his own consent. And by this contract with Eliakim Hough, and its part performance, the plaintiff had acquired a right to the whole property, of which he could not be deprived without his own consent. So too, he is the owner of such absolute interest, who must necessarily sustain the loss if the property is destroyed. The subject of insurance was an interest, not a title. It is an interest, not a title, of which the conditions of insurance speak. The terms " interest " and " title " are not synonymous. A mortgagor in possession, and a purchaser holding under a deed defectively executed, have, both of them, absolute, as well as insurable interests in the property, though neither of them has the legal title.

The decision in the case of *Warner* v. *Middlesex Mutual Assurance Co* , 21 Conn., 444, turned upon the peculiar provisions of the defendant's charter. The defendant was a mutual insurance company, entitled to a lien upon the property insured for future assessments, and was therefore interested in knowing the exact state of the assured's title. The assured was a member of the defendant's corporation, and conclusively presumed to know all the provisions of that charter. The charter in express terms provided that no insurance should be valid, unless the insured " had a good and perfect unincumbered title at the time of effecting such insurance, or unless the true title of the insured and the incum-

brances, if any, were fully disclosed and expressed in the proposals for insurance, and were also specified in the policy." And that charter, by reference to it in the application and the policy, was made part of the contract between the parties. In the case at bar, there is no such provision in the charter or stipulation in the contract, and no obvious reason for requiring from the assured an exact statement of his title, so that there be no fraud, misrepresentation or concealment concerning it, and so that the assured shall in no event be enabled to recover for a loss which has not fallen upon him, and is not his loss in fact.

It seems to have been the leading object of the framers of this third article of the conditions of insurance, to protect the company against the payment of losses to individuals who had not in fact sustained them. Thus, the first clause provides that property held in trust, or on commission, must be insured as such, because, in the one case, the *cestui que trust* and not the trustee, and, in the other, the consignor and not the factor, would be the real or principal loser by the destruction of the property. So in regard to the holder of property under a lease, or whose interest in the property is contingent, if the property is destroyed the entire loss may fall upon the landlord in the one case, and in the other, instead of falling upon the individual insured, may by the happening of the contingency be cast entirely upon another. The condition in question speaks only of the character of the interest to be insured, not of its quantity. *Absolute* is here synonymous with *vested*, and is used in contradistinction to contingent or conditional.

That the plaintiff had a vested interest in the property, of which he could not be deprived against his will—an interest dependent upon no contingency for its existence or continuance—an absolute interest—and that the property was properly denominated " his," the evidence undoubtedly conduced to prove, and was properly received; and the charge of the court on this point was unexceptionable.

2. Pending the decision of the court upon the question already considered, the plaintiff offered evidence that he pro-

cured the insurance of the defendant's agent, Houghton, and that, during his negotiations with Houghton for such insurance, he fully stated to said Houghton the facts relating to the nature of his title, and that his application for insurance was filled out by said Houghton. The defendants objected to this evidence, on the ground that such parol statements were merged in the written contract, and on the ground that the plaintiff's representations regarding his interest in the property should have been made to the company itself or to its officers in writing. Without intending to call in question the rule of law that parol evidence is inadmissible to affect written instruments, we hold that this evidence was properly received. The defendants claimed that the plaintiff's denomination of the property as "his," was a misrepresentation which rendered the insurance void, and to meet that claim, it would undoubtedly have been proper for the plaintiff to show, that he made such statements to the defendants themselves, and that the language of the application was their own. To allow the defendants under such circumstances to avoid their contract on account of a mistake into which they themselves had led the plaintiff, would be to allow them to take advantage of their own wrong. So too the evidence was proper as conducing to prove an understanding and agreement between the parties to consider and treat the property as belonging to the plaintiff. In the case of *Peck* v. *New London Mutual Ins. Co.*, 22 Conn., 575, part of the property insured and destroyed was owned by one of the plaintiffs, and part by the other, in severalty. It was all insured as if the plaintiffs were joint owners of the whole, and in their declaration they alleged they were so. Parol evidence was given that, at the time of procuring the policy, the plaintiffs made to the defendants' agent a full statement regarding their title, and that said agent filled up and issued the policy in language of his own selection. And this court held that the evidence " was properly received for the purpose of showing that the parties agreed to treat the property insured as the joint property of the plaintiffs."

We have already seen that the interest which the plaintiff offered to show was an absolute interest, and, consequently,

that the condition of insurance relied upon as rendering the policy void had no applicability, and we find no other provision in the contract which requires that a title like the plaintiff's should be particularly described, or represented to the company in writing, as the defendants claim.

But it is said that the statements were not made to the defendants or their officers, and that the agent to whom they were made had no authority to receive them. Whether Houghton was authorized to receive these statements and charge the defendants with the consequences, was a question of fact in regard to which the written instruments furnished no information. In those instruments the defendants recognize him as their agent, but do not state the limits or extent of his authority. That was left to be inferred from the nature of his agency, the duties incident to agencies of that kind, and the manner in which his duties had been performed in fact, with the express or implied approbation of the defendants—an inference of fact which the jury alone could make—and the question was properly submitted for their consideration.

Lastly : the defendants contend that, by the plaintiff's answer to the fourth interrogatory in his application, he stipulated that the insured buildings should be occupied by a tenant.

We think the defendants are wrong. The object of the inquiry was to ascertain the kind and character of the business carried on in the buildings, in order to enable the insurer to calculate the degree of hazard to which those buildings would be exposed. Hence the inquiry "how"—that is, in what manner, not by whom—are the several stories occupied. And the first clause of the answer, "unoccupied," is directly and completely responsive to the question. Nothing more need have been said, or was said, by way of answer to that interrogatory. But as the plaintiff had already advertised the premises to let, it was natural, if not necessary, that he should notify the defendants of the fact, and accordingly he added "but to be occupied by a tenant," intending thereby to reserve to himself the right, not to incur an obligation, to put a tenant into the vacant buildings. And so we think the defendants ought to have under-

stood it. In our judgment therefore, the opinion expressed by the judge upon the trial on this point was right, and might have been given to the jury for their guidance as the true construction of the contract.

But the course actually taken was one of which the defendants have no reason to complain. When no time for the performance of a contract, other than the payment of money, is specified in the contract itself, the law allows a reasonable time for such performance. And what is reasonable time, is generally a question of fact for the determination of the jury. In some cases, indeed, the court can decide, but those are cases in which it can be determined by the simple application of some settled rule or principle of law, to facts proved or admitted on the trial. 1 Stark. Ev., 451–9. Thus, notice of the dishonor of a bill of exchange must be given to the indorser in a reasonable time after such dishonor, but what shall be deemed reasonable time has become a settled rule of law, so that the time and place of protest, the place of the indorser's residence, the course of the post, &c., being admitted, the court can, by the application of the rule alluded to, decide whether the notice was given in reasonable time or not. But where the law is silent, and does not by the operation of any principle or established rule decide upon the legal quality of the simple facts, it is for the jury to draw the inference of reasonable or unreasonable in point of fact. 1 Stark. Ev., *supra.* We know of no rule or principle of law by the application of which we can decide the question in the case before us. We think it was properly submitted to the jury. Whether the finding of the jury was right or not, we have not on this motion the means of knowing, and can not decide.

Upon all of the points made we think the rulings of the superior court were correct, and advise that the motion for a new trial be denied.

In this opinion the other judges concurred.

New trial not advised.