AMERICAN, (GAYTES v.)

[See Gaytes v. American, Case No. 5,286.]

AMERICAN BANNER, The, (TOWN v.)

[See Town v. The American Banner, Case No. 14,112a.]

AMERICAN BAPTIST MISSIONARY UNION, (TURNER v.)

[See Turner v. American Baptist Missionary Union, Case No. 14,251.]

## Case No. 290.

AMERICAN BASKET CO. v. FARMVILLE INS. CO.

[3 Hughes, 251;[1] 8 Reporter, 744; 8 Ins. Law J. 331.]

Circuit Court, E. D. Virginia. Nov. 25, 1878.

INSURANCE—CONDITION OF POLICY—TITLE OF POLICY HOLDER TO ASSURED PREMISES—EQUITABLE TITLE.

1. Where the beneficial title remains in the insured, the fact that the naked legal title outstands in another does not vitiate a policy of fire insurance requiring that the insured should be "entire, unqualified, and sole owners for their own use and benefit."

[Cited in Williams v. Buffalo German Ins. Co., 17 Fed. 65; Lewis v. New England Fire Ins. Co., 29 Fed. 497.]

2. An oath to such ownership is not falsified by the title being in another, where the oath is made in good faith.

[Cited in Williams v. Buffalo German Ins. Co., 17 Fed. 65.]

[At law. Action of assumpsit by the American Basket Company against the Farmville Insurance Company, pursuant to the Code of Virginia, on a policy of fire insurance, claiming $1,750 damages. Verdict and judgment for plaintiffs.]

Plaintiffs are a corporation of the state of Connecticut. The defendants are a corporation of Virginia. The property insured and burnt was in the state of Delaware, at a place called Milford. Myers was a regular insurance agent in the state of Delaware, resident in Delaware City, and in this matter was the agent of the defendants. Williams was a resident of Milford, and a solicitor of insurance business for Myers. The property was insured through the agency of Myers; and the "application" of plaintiffs for insurance, which was signed by an officer of the plaintiffs, was a printed form of questions and answers, in which the answers were written in the hand writing of Williams. Evidence was given by the plaintiffs tending to prove that full explanations of the condition of the title of the property at or before the time when the application was written out were given. It was proved

[1][Reported by Hon. Robert W. Hughes, LL.D., District Judge, and here reprinted by permission.]

that the property was bought and paid for in full by the plaintiffs, and that they were in undisputed possession and use of it. But the record-title was in Orrin E. North, an officer of the plaintiff company, in consequence of a law of Delaware which forbade a foreign corporation from holding real estate in that commonwealth. In the application, in the answer to the question, "In whose name is the title to the property" insured? it was stated, in the handwriting of Williams, it was "in the name of the American Basket Company." In the "proof of loss," made out after the fire, and signed by an officer of the plaintiffs, in answer to the question, "Did the building stand upon leased premises?" the answer, written in Myer's handwriting, was "No—held in fee." The policy contained a clause of forfeiture in the event of false swearing in the proof of loss; another clause requiring a full disclosure of the ownership in the application; and the "entire, unconditional and sole ownership in the property insured for the use and benefit of the assured." It contained no clause of forfeiture by future incumbrances; but did contain a provision voiding the policy if "any change should take place in the title or possession of the property by voluntary transfer" or other specified methods. During the period of insurance, and some four months thereafter, the plaintiffs caused Mr. North to make a deed of mortgage of the property for securing a considerable debt. The plaintiffs' witnesses testified to the solvency of their company. These were the principal facts of the case, and upon them the counsel on both sides asked instructions. The court modified and condensed these, and gave a preliminary opinion as follows.

Judge Meredith and John A. Coke, for plaintiffs.

W. W. Henry, P. W. McKinney, and J. P. Fitzgerald, for defendant.

HUGHES, District Judge. Policies of insurance, like all other written contracts, must be construed and enforced according to their terms. If they convey a plain, practical meaning, that meaning must be carried into effect. Policies of insurance differ somewhat from other contracts, however, in respect to the rules of construction to be applied to them. They are unipartite. They are in the form of receipts from insurers to the insured, embodying covenants to compensate for losses described. They are signed by the insurer only. In general the insured never sees the policy until after he contracts and pays his premium, and he then most frequently receives it from a distance when it is too late for him to obtain explanations or modifications of the policy sent him. The policy, too, is generally filled with conditions inserted by persons skilled in the learning of the insurance law and acting in the exclusive interest of the insur-

ance company. Out of these circumstances the principle has grown up in the courts that these policies must be construed liberally in respect to the persons insured, and strictly with respect to the insurance company. See Insurance Co. v. Wilkinson, 13 Wall. [80 U. S.] 232.

Another rule of the law in regard to fire insurances is to discourage wager policies; that is to say, policies taken by persons who have no interest in the property insured, and in which such persons merely bet that the property will not be burned. Such insurances are contrary to public policy and promote fires. The law will, therefore, give force to all provisions in policies of fire insurance which require that the person who takes out the policy shall have an interest in the property, and shall disclose that interest with precision in his "application" for insurance. That is the purpose of the law, and is the object sought to be subserved by the insertion of clauses voiding them in cases where deception is practiced in regard to the real ownership of the property insured; and terminating them whenever, during the period of insurance, the person holding a policy ceases to own the property, and it becomes thereby a wager policy. Therefore, clauses in policies requiring a truthful statement of the interest of the applicant for insurance, and forbidding changes of ownership during the period of insurance, are to be construed not technically to the prejudice of the policy-holder, but rationally and fairly to protect the insurance company from the extraordinary risks, and from the certain and numerous losses which would fall upon them from insurance of property not actually owned by the persons insured.

In the case under trial there are two questions, which have formed the subject of contention between counsel, and upon which instructions are asked of the court.

I. The first is, whether plaintiffs' right to recover is defeated by the fact that the record-title could not be held by the plaintiffs under the laws of Delaware, and was therefore vested in Mr. Orrin E. North, if not made known to the defendant or its agent at the time of the insurance of the policy, considered in connection with the statement in the application for insurance that the title was "in the name of" the plaintiffs. I am of opinion that it is not defeated by that fact if the plaintiffs were the "entire, unqualified, and sole owners" of the property insured "for their own use and benefit." I do not think that the fact of the record-title being in Mr. North of itself defeats their right to recover, unless their statement in the application was made to deceive and mislead the insurance company. The evil sought to be avoided by those provisions of the policy requiring a correct statement of the plaintiffs' interest in the property was the insurance of property not owned by the

holder of the policy, the destruction of which would not cause a loss to that holder equal to the value of the property destroyed. If the plaintiffs in the case at bar were the owners of the entire beneficial interest in the property at the taking out of the policy, and would have been losers to the full extent of its value if it had been destroyed, then this ownership fulfilled every purpose which the provisions of the policy in regard to a disclosure of interest were designed to secure, and, in the absence of fraud or fraudulent misrepresentation, a merely technical difference in the title, set out in the application, ought not in equity and good conscience to defeat the plaintiffs, if they are otherwise entitled to recover. The question for the jury in this point is, therefore, whether the statement in the "application" for insurance that the title was in the "name of the American Basket Company" misled the defendant or its agent, and was intended to do so. If they think not, it is my opinion that the fact of the record-title being in Mr. North does not of itself defeat the action, if the plaintiffs are otherwise entitled to recover. In this same connection I will consider the statement on oath in regard to the title made in the "proof of loss." The same rule of law as to the real ownership of insured property, which has been explained, applies here. If the person holding the policy swears that he was owner of property destroyed by fire, of which he was not in fact the full and sole beneficial owner, the fact that he was not owner proves that his policy, contrary to its carefully-expressed provisions, had been a wager policy, and defeats his right to recover; and this the more justly because he has practiced a fraud, and has added perjury to his fraud. It is for the jury to say from their view of the evidence whether the full beneficial ownership of the property destroyed in the case on trial was or was not in the plaintiffs; whether or not this ownership had been divested at the time of the fire by the mortgage deed of 18th of September, 1876, or by any other transfer, so as to render the statement on oath made by the plaintiffs' agent in the "proof of loss" that they were, such fraud or false swearing as is contemplated by the clause in the policy relating to that subject. Unless they believe that such fraud was practiced and such false swearing committed, the plaintiffs' action is not defeated by the statement in regard to the ownership and title in the proof of loss.

II. The second question of contest is in regard to the effect of the mortgage executed on the insured property by the plaintiffs on the 18th of September, 1876. The authorities on the subject are conflicting in cases where the policy does not provide against future incumbrances, the supreme courts of some of the states deciding that the execution of a mortgage deed of itself violates the provisions usually found in insurance policies as to transfer and alienation of property during the period of insurance, and those of other states deciding that it is only after divestiture of title and ownership by foreclosure or otherwise that such result occurs. I am not aware of any decision of the court of appeals of Delaware or Virginia, or indeed of the supreme court of the United States, determining the law of this subject, and must act in the case at bar upon my own views of the law and equity of the case. And it seems to me that the provision in the policy now sued upon, forbidding any change in the title or possession of the insured property during the period of insurance, should be construed with reference to the cardinal object sought to be subserved in all provisions designed to prevent persons not having an interest and ownership in property from taking out policies, and to prevent insured persons who cease to have an interest and ownership in property from continuing to hold such policies. So that the inquiry for the jury is whether or not the mortgage of September, 1876, operated to deprive the plaintiffs of their ownership in the insured property, so that, if it was burnt, their loss would be to the extent of the full value of the property destroyed. If, therefore, a person who is insolvent, and so much so as to be hopeless of reinstating his affairs, mortgages his property and thereby ceases to have any real interest in it as owner, so that his loss, if it is burnt, would be merely nominal; or if, after mortgaging, he makes default, and a foreclosure and divestiture of his title and beneficial interest ensues, there is, in either case, such a change in the ownership as renders the policy as to him a wager policy, and as defeats his right to recover in the event of fire. But if the mortgagor remains solvent and thereby remains the sole beneficial owner of the insured property, and would sustain a loss, in the event of fire, to the full extent of the value of the property destroyed, then such a mortgage does not work such a change in the "title or possession" of the property insured as to defeat the plaintiffs' action, if they are otherwise entitled to recover. In accordance with these views I have modified the instructions for the jury respectively asked for by counsel in the cause, and embodied them as follows:

I. If the plaintiffs were the entire, unconditional, and sole owners of the property insured, for their own benefit, and had undisputed possession of it at the date of the policy, then the fact that the record-title was in another person does not defeat their right to recover in this action, unless they concealed the condition of the record-title from the defendant company and its agents, and misled them by a contrary statement in their application for insurance, or unless they sought to deceive and mislead them in regard to the record-title and ownership at

the time of the fire by false swearing in their proof of loss.

II. The execution of a mortgage by the plaintiffs, after taking out the policy of insurance, did not defeat their right to recover in this action, unless the mortgage, by reason of their insolvency or otherwise, wrought such a change in their ownership or interest in the property that their loss at any time before the fire would have been, or at the time of the fire was, less than the full value of the property destroyed.

The jury, after a short absence, brought in a verdict for the plaintiffs, with damages at $1,750 and interest.